**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| United States of America, | : | |
| Plaintiff, | : | |
| vs. | : | Case No. 2:21-cr-218-001 |
| Brandon Bowling, | : | Judge Sarah D. Morrison |
| Defendant. | : | |

**SENTENCING MEMORANDUM**

*INTRODUCTION:*

Now comes the Defendant, Brandon Bowling, by and though counsel, and states his reasons for requesting a sentence of 48 months for his very limited participation in a conspiracy to distribute narcotics. He has already served more than 20 months in Franklin and Butler County, Ohio jails, since his arrest on August 13, 2021.[1]

Brandon is 27 years-old and was born and raised here in Columbus, Ohio. (ECF 34, Pre-Sentence Investigation Report [PSIR]; PID #88, ¶ 46). Brandon is before the Court due to his actions while in active addiction. Upon arrest he was very remorseful and accepted responsibility for his behavior. (ECF 34, PSIR; PID # 83, ¶¶ 27, 28).

Brandon's road to addiction stared when he was 18 years-old. (ECF 34, PSIR; PID

---

[1] As the Court is aware, the conditions in these local jails inflict a type of detention that is quite punitive. These conditions create a severity of punishment that is greater than necessary to achieve the goals of 18 U.S.C. ¶ 3553(a). This extended period of enhanced punishment is one of a number of rational basis to support a sentence below the advisory guideline range.

1

#91, ¶ 58). He was introduced to his drug of addiction by the mother of a former girlfriend. (Id.). In an effort to stop using that drug, Brandon started using methamphetamine, which lead to his involvement in this case. (Id.). Brandon did this to avoid getting dope-sick.

### STANDARD OF REVIEW:

When sentencing an offender in the post-*Booker* era, the District Court considers the applicable advisory sentencing guidelines range as well as the other factors listed in 18 U.S.C. §3553(a). The objective of this process is to reach a sentence that is sufficient, but not greater than necessary, to comply with the purposes of sentencing listed in §3553(a)(2). *United States v. Lee*, 974 F.3d 670, 676 (6th Cir. 2020).

The District Court begins by correctly calculating the applicable advisory guideline range. *Gall v. United States*, 552 U.S. 38, 52, (2007). After giving the parties an opportunity to argue and recommend an appropriate sentence, the district court must consider the remaining §3553(a) factors to determine whether they support the recommended sentence. *Gall*, at 49. The court may not presume the guideline range is reasonable; rather, it must make a fact-based individualized assessment. *Id*. at 50; *Nelson v. United States,* 555 U.S. 350 (2009).

### STATUTORY CONSIDERATIONS:

18 U.S.C. §3553(a) provides:

**(1)** <u>the nature and circumstances of the offense and the history and characteristics of the defendant;</u>

### ~HISTORY & CHARACTERISTICS~

Brandon was born in 1994, in Columbus, Ohio. (ECF 34, PSIR; PID # 88, ¶ 46). Brandon's parents divorced when he was in high school, and his father basically gave up on him, after Brandon's addiction started. (Id.). His parent's divorce was hard on Brandon.

After the divorce, Brandon said his mom was "working all the time" to provide for him and his two siblings, and as a result he was "alone a lot" and "did not have a lot of supervision." (Attorney Notes from PSIR Interview). Otherwise, his childhood was not the nightmare this Court often sees with other drug defendants. He was not physically or sexually abused. His parents were not drug or alcohol dependent or engaged in criminal activity themselves. In these regards, Brandon was very lucky.

He was not lucky, however, in his brain's susceptibility to chemical dependency. Brandon was also unlucky because he grew up in a rough neighborhood on the westside of Columbus. Criminal activity in his neighborhood was "normal" and illegal drug use was common-place. (ECF 34, PSIR; PID # 89, ¶ 47).

Unsurprisingly, living in that neighborhood, Brandon was introduced to his drug of choice as a teenager. He was immediately hooked and used almost every day until the day he was arrested. In fact he had overdosed on that day. (ECF 34, PSIR; PID # 91, ¶¶ 58-61). Futilely Brandon tried other hard drugs to try and stem his initial addiction. And, unfortunately, he found an even more potent form of his main drug of choice that is almost guaranteed to result in his overdose-death in the future, if he does not receive the intensive treatment that the BOP can provide, especially through the RDAP program. (Id.).

Fortunately, for Brandon's future he has family that loves him. His stepfather, Aaron Schmidt, considers Brandon his natural born son. He said that Brandon is generous and helpful and that his only goal in life was to join the military, which was derailed by his drug addiction. (ECF 34, PSIR; PID # 89, ¶ 50). Brandon was in Junior ROTC in high school for all four years. (Attorney Notes from PSIR Interview).

His mother, Miki Schmidt, told U.S. Probation that Brandon has a good heart and

3

worked hard in school. He graduated high school, even though he struggled with significant attention issues and was in an individualized education plan. (Id. at PID # 89-90, ¶ 51). Both his parents said that Brandon is an especially skilled mechanic and that he could excel in that field if he could get sober. Brandon is welcome in their home upon release, so long as he is working full-time and staying on his treatment program. (Id. at PID # 89-90, ¶¶ 50-52).

Brandon is also the father of two young children, an eight-year-old girl, and a seven-year-old boy, with Tania Parker. (ECF 34, PSIR; PID # 89, ¶ 48). Ms. Parker sadly is a drug addict too. Her whereabouts are unknown, but she is believed to be living in the western United States. Brandon's children are in the custody of Ms. Parker's mother, living about an hour south of Columbus, Ohio. (Id. at PID # 89, ¶ 48). Miki noted that the children are very important to Brandon and intimated that he is ashamed of himself for letting them down. Brandon has communicated as much to undersigned counsel. (Id. PID # 90, ¶ 52). He becomes very emotional when talking about his children.

Brandon is sober now for the longest period of time, since he first got hooked. He is looking forward to both addiction and mental health treatment as well as expanding his skills as a mechanic, while with the BOP. He prays that with long-term substance abuse treatment and additional vocational training, he will be successful on supervised release and reestablish his relationship with his children.

### ~NATURE AND CIRCUMSTANCES OF THE OFFENSE~

Brandon was in active addiction when he agreed to accompany his drug dealer to make a sale to a confidential source. Brandon handed the baggie of drugs to the source. He was not armed and there was no use of force or threat of force. Though he was

supposed to be the dealer's "protection," it was obvious from the video surveillance that Brandon was just a strung-out junkie in need of his "fix." He agreed to do this to get more drugs to avoid withdrawal. (ECF 34, PSIR; PID # 81, ¶¶ 8-9).

Brandon has accepted responsibility for his actions in this case. His remorse was evident during the PSIR interview and during his interactions with undersigned counsel. He has said this was the dumbest thing he's ever done, short of the day he agreed to try hard drugs for the first time.

**(2)** the need for the sentence imposed

**A.** to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

The requested sentence of 48 months for Brandon's convictions is sufficient but not greater than necessary to accomplish the goals of 18 U.S.C. § 3553(a). Importantly, Brandon is an addict who needs treatment. His illegal act arose completely from his addiction.

A 48-month sentence of incarceration reflects the level of seriousness of his minor participation in this case, as an addict. It will generate respect for the law, as he'll receive a four-year prison sentence for his limited, nonviolent act. And, if there is a "just punishment" for being a drug addict who handed a baggie of drugs over for his dealer to get more drugs to keep from being sick, four years of incarceration would certainly send a strong and sufficient message.

Brandon understands and accepts that there must be consequences for his actions. The federal government has greater resources to help him with treatment and recovery, and he is hopeful the Court will emphasize treatment more than incarceration, in giving him

a 48-month sentence of imprisonment. Brandon knows that the only way he will live to see his children graduate high school and beyond is to get long-term substance abuse treatment, starting in the BOP and continuing thereafter.

**B.** to afford adequate deterrence to criminal conduct;

Brandon, during his time in the Franklin County and Butler County jails, has learned that the consequences for his actions are very serious and will deter him from re-offending. He hopes others like him, the drug addicted, will learn from his mistakes and successfully seek help before it's too late. Brandon voluntarily entered treatment in April of 2021, but left after two days, because the program was overwhelming. (ECF 34, PSIR; PID # 91, ¶ 62).

**C.** to protect the public from further crimes of the defendant;

Brandon's incarceration will certainly protect the public from further crimes, though he has already committed himself to sobriety and thereby a law abiding life going forward. Moreover, after receiving substance abuse treatment, and furthering his trade skills, Brandon will be well equipped to lead a productive, drug-free life upon release.

**D.** to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

As discussed above, the BOP is well equipped and funded to meet Brandon's substance abuse treatment needs. He is looking forward to finally getting the long-term care that he needs for his disease, not only so he can become a better member of society, but most importantly so he can be a better father upon his release.

**(3)** the kinds of sentences available;

The Court is now permitted to consider arguments that the applicable guidelines fail to properly reflect §3553(a) considerations, reflect an unsound judgment, do not treat defendant characteristics in the proper way, or that a different sentence is appropriate regardless. *Rita v. United States*, 551 U.S. 338, 351, 357 (2007). Judges "may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines. "*Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (internal quotation marks and citations omitted).

Here, counsel is requesting the Court sentence Brandon below the advisory guideline range, based upon a fact-based, individualized assessment of his circumstances.

**(4)** the kind of sentence and the sentencing range established for

    **A.** the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines–

    **(I)** issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and

    **(ii)** that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; * * *

Again, the defense is requesting a sentence below the guideline range for the reasons stated above and below.

**(5)** any pertinent policy statement

    **A.** issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy

> statement by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and
>
> **B.** that, except as provided in section 3742(g), is in effect on the date the defendant is sentenced.

(Please See Below: *Ground for Departure and Variance*).

**(6)** <u>the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;</u>

Sentencing Brandon below the advisory guideline range, would not create an unwarranted sentencing disparity among drug-addicted defendants whose actions were motivated solely to avoid drug withdrawal, where no violence or threat of violence was involved and where the defendant was a minor participant. Moreover, as the guidelines are advisory, this Court in its sole discretion, based upon its own fact-based, individualized assessment of the circumstances of this case, is free to sentence Brandon to a term of imprisonment that it deems sufficient, but not greater than necessary, to achieve the overall goals of the sentencing statute.

**(7)** <u>the need to provide restitution to any victims of the offense</u>.

There is no restitution in this case.

***OBJECTIONS TO PSIR:***

There are no objections to the U.S. Probation Department's calculation of Brandon's advisory guideline range. As stated in the PSIR, Brandon's initial base offense level was 30. However, because he met all the requirements for the "safety valve" under U.S.S.G. § 5C1.2 he is eligible for a two-level reduction in his offense level, and that also removed the requirement of a mandatory-minimum sentence. Moreover, because Brandon's role

was a minor one, he is eligible for another two-level reduction. And finally, because he has accepted responsibility for his actions and gave the government timely notice of his intention to plead guilty, an additional three-level reduction is applied, resulting in a final offense level of 23. He has a criminal history score of six points, placing him in criminal history category III. This results in an advisory guideline range of 57-71 months.

### *GROUNDS FOR DEPARTURE AND/OR VARIANCE:*

Counsel for the defense argues that there are two grounds for a departure and/or variance. As the guidelines are advisory, the Court is free to consider any factors it deems relevant in crafting a sentence that is sufficient but not greater than necessary to achieve the goals of 18 U.S.C. § 3553(a).

The **first ground** for departure or variance is **§ 5H1.4 – Physical Condition, Including Drug or Alcohol Dependence or Abuse.** Though the guideline specifically states that drug or alcohol abuse is not "ordinarily" a reason for a downward departure, there is nothing preventing this Court from considering it as a variance for a sentence below the advisory guideline range.

Importantly, from a science perspective the guideline's advice against downward departure is unreasonable. Therefore, on that basis alone, the court is free to disregarded it. *Kimbrough v. United States*, supra. Drug dependence is listed in the Fifth Edition of the Diagnostic and Statistical Manual of Mental Disorders. This is a disease, not a moral failing. Brandon acknowledges his criminal conduct must be punished, but his actions came from no disrespect or contempt for the law, but because of an overpowering physical and psychiatric reaction to drug withdrawal.

Brandon first tried the drug that led him to this court when he was only a teenager. This was when the frontal lobes of his brain were still developing. These areas of the brain are responsible for "executive" function/ decision making and impulse control. He was coaxed by an older adult, the mother of one of his girlfriends into trying the drug. That is a decision he will regret for the rest of his life. Brandon may have made an immature decision when he was in his late teens, but he did not choose his brain chemistry. He did not choose to be one of the millions of Americans who try one of these powerful narcotics, but then be in the relatively small percentage of those curious people who immediately become addicted.

Brandon's medical condition, in combination with the following ground, provides a substantial, rational basis for a sentence of 48 months incarceration, when his involvement in this crime was 100% due to his body and brain being hijacked by these powerful narcotics.

The **second ground** for departure or variance is found in **§ 4A1.3(b)**. That section states:

DOWNWARD DEPARTURES.—
(1) STANDARD FOR DOWNWARD DEPARTURE.—If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted.

Here, there is reliable evidence from Brandon's criminal history that all but one of his prior crimes of conviction or charges were for misdemeanors of theft, petty theft, drug paraphernalia, giving false information to police as a passenger in a car, and for not having a driver's license or insurance. None of these offenses were violent or otherwise

considered very serious crimes, and all were arose from his drug addiction. His only felony conviction was for receiving stole property, when a friend let him ride a motorcycle that turned out to be stolen. Therefore, the seriousness of his criminal history is substantially over-represented. And, with long-term substance abuse treatment, he is unlikely to be involved in criminal behavior again, as all of his prior criminal behavior revolved around him being an addict. Therefore, if the Court grants a departure to criminal history category II, his advisory guideline range would be 51-63 months.

A reduction in his criminal history category for over-representation, in combination with a departure or variance in light of his disease of chemical dependency, in the absence of which he would not be before the Court, a sentence of 48 months (four years) of incarceration is sufficient to meet the goals of the sentencing statute.

## **CONCLUSION**

Brandon asks this court with deep contrition to grant his request for departure/ variance from his advisory guideline range, because he has the disease of chemical dependency that was the sole driver of his desperate behavior here. He did not choose to be a drug addict, and wishes with all his heart he could take back that initial choice to try the drug that hooked him the very first time he used it. His resulting contacts with municipal court and one felony conviction were all a result of his crippled decision making abilities (in his brain), because of these drugs. He is not an evil or bad man. Brandon was not "wantonly" breaking the law. Indeed, his respect and honor for rules and order were evidenced by his participation in four years of Junior ROTC in high school and his dream of serving in the U.S. Armed Forces. He is a good person with a big heart who was unlucky in his life circumstances.

Brandon will now receive the long-term care he needs at the BOP. And, with the skills he already has as a mechanic, he stands a better than average chance of staying sober and not re-offending in anyway.

Brandon has fully accepted responsibility for his actions. He realizes he needs significant help to move forward and is looking forward to a future of sobriety and reestablishing his relationship with his children whom he adores.

Therefore, defense counsel respectfully requests a sentence of 48 months for Brandon's conviction, as it is "sufficient but not greater than necessary" to achieve the purposes of sentencing set forth in 18 U.S.C. §3553(a), for a 27-year-old father of two with chemical dependency.

        Respectfully Submitted,

        /s/ Andrew P. Avellano
        ANDREW P. AVELLANO (0062907)
        Counsel for Brandon Bowling
        4200 Regent Street
        Suite 200
        Columbus, Ohio 43219
        (614) 237-8050, phone
        E-mail: andy@drewavo.com

## **CERTIFICATE OF SERVICE**

The under signed hereby certifies that a true and accurate copy of the foregoing was served upon Nicole Pakiz, Assistant U.S. Attorney 303 Marconi Blvd., Suite 200, Columbus, OH 43215, this 19th day of April 2022 via the Court's ECF system.

/s/ Andrew P. Avellano
ANDREW P. AVELLANO, Esq.
Counsel for Defendant